**KINNEY COUNTY GROUNDWATER CONSERVATION DISTRICT and Darlene Shahan, in her Official Capacity as General Manager of the Kinney County Groundwater Conservation District, Appellants,**

v.

**Toledo P. BOULWARE, Individually and as a Trustee, Justin Burk d/b/a Burk Farms, Robert E. Condry, Dos Angeles, L.P., Zach and Kayla Davis, D.M.C. Partners, Ltd., Willie Jo Dooley LP, Hayden G. Haby, Doris Y. Haby, Hayden G. Haby, Jr., Dennette Haby Coates, Melanie and John Jones in their Capacity as Joint Representatives of the Ben Jones Sr. Estate, McDaniel Farms, Inc., Jewel F. Robinson, and 4–S Ranch, Appellees.**

No. 04–07–00079–CV.

Court of Appeals of Texas, San Antonio.

July 18, 2007.

454

Louis T. Rosenberg, Nohl Patrick Bryant, Law Office of Louis T. Rosenberg, P.C., San Antonio, Marisa Perales, Richard W. Lowerre, Lowerre & Frederick, Austin, TX, for Appellant.

Howard S. Slobodin, Paul M. Terrill, III, Hazen & Terrill, P.C., Edmond R. McCarthy, Jackson, Sjoberg, McCarthy & Wilson, L.L.P., Austin, TX, for Appellee.

Sitting: CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

This is an interlocutory appeal from the denial of a plea to the jurisdiction filed by the appellants, Kinney County Groundwater Conservation District and Darlene Shahan, in her official capacity as general manager of the Kinney County Groundwater Conservation District (collectively "the District"). Because the District's plea to the jurisdiction fails to demonstrate that the trial court lacks subject matter jurisdiction, we affirm the trial court's order denying the plea to the jurisdiction.

### BACKGROUND

The Kinney County Groundwater Conservation District was created by the Texas Legislature in 2001 and is empowered to regulate groundwater withdrawals within Kinney County. See Act of May 25, 2001, 77th Leg., R.S., ch. 1344, 2001 Tex. Gen. Laws 3329; TEX. WATER CODE ANN. § 36.0015 (Vernon 2000); KINNEY COUNTY GROUNDWATER DIST. R. 1.01–.02. The District regulates groundwater withdrawal through a permit system. See TEX. WATER CODE ANN. § 36.113; KINNEY COUNTY GROUNDWATER DIST. R. 9.01–.10. Under this permit system, the District can issue permits to authorize the continuation of "historic" and "existing" beneficial, non-wasteful uses of groundwater from the Edwards–Trinity aquifer. See KINNEY COUNTY GROUNDWATER DIST. R. 1.05, 9.01–.10. Existing/historic users are generally entitled to withdraw an amount of groundwater equal to the applicant's max-

imum beneficial use of water during the applicable existing or historic use period. *See id.* at 9.09–.10. During the interim period of time before the issuance or denial of an existing/historic use permit, existing/historic users may withdraw and beneficially use groundwater in an amount not to exceed the applicant's maximum existing/historic use as designated in his or her permit application. *See id.*

Toledo Boulware, Justin Burk d/b/a Burk Farms, Robert Condry, Dos Angeles, L.P., Zach Davis, Kayla Davis, D.M.C. Partners, Ltd., Willie Jo Dooley LP, Hayden G. Haby, Doris Y. Haby, Hayden G. Haby, Jr., Dennette Haby Coates, Melanie and John Jones in their capacity as joint representatives of the Ben Jones Sr. Estate, McDaniel Farms, Inc., Jewel F. Robinson, and 4–S Ranch (collectively "the applicants") are all applicants for existing/historic use permits. It is undisputed that the applicants filed their completed permit applications with the District before the deadline for filing such applications (December 1, 2003).

The record reflects that the District set a preliminary hearing on the applicants' permit applications on August 12, 2004. At this preliminary permit hearing, the District took appearances from the applicants as well as from other individuals seeking to contest the permit applications. The District, however, continued the proceeding for separate evidentiary hearings on each permit application.

The District commenced evidentiary hearings on the applicants' permit applications in September 2004. These hearings occurred in accordance with the policies and procedures adopted and implemented by the District shortly before the scheduled hearings.[2] Following these hearings,

the District's water expert, Steve Walthour, prepared a hearing report for consideration at a public hearing pursuant to the Rules of the Kinney County Groundwater Conservation District. *See* KINNEY COUNTY GROUNDWATER DIST. R. 1.05 *et seq.* Walthour's hearing reports recommended that the District Board grant each of the applicants an existing/historic use permit and, for the most part, advised the Board to approve the permits for lesser amounts of water than had been sought by the applicants.

On December 10, 2004, the District Board met for the purpose of considering the hearing reports prepared by Walthour and to make decisions on the permit applications. At the public hearing, the District postponed any action on the permit applications until March 3, 2005. The District, however, reset the hearing for an earlier date (January 28, 2005) after the applicants filed petitions for writ of mandamus to compel the District to take immediate action on their permit applications.

Beginning on January 28, 2005, the District held hearings on the applicants' permit applications. With respect to the permit applications, the District Board voted to reject the opinions of Walthour and the applicants' water experts regarding the amount of water recommended for withdrawal by the applicants. Although the Board ultimately approved the applicants' permit applications, the Board authorized the use of significantly less groundwater than had been sought by the applicants. In fact, the Board authorized the use of less groundwater than Walthour, the District's own expert, had recommended for withdrawal. At the conclusion of each of

---

**2.** These policies and procedures are known as "Procedural Guidance" and applied to all permit application proceedings in the District.

the hearings, a Board member orally pronounced the following:

As part of this motion, I would like to direct our Presiding Officer or Co–Presiding Officer to sign an order that reflects the board's decision on this application, in writing, with today as the effective date of the board's decision. This effective date is important for the purpose of beginning the twenty-calendar day deadline for requesting a rehearing under our Rule 17.10.[3]

The Board did not reduce its decisions to writing at that time.

The applicants requested a rehearing of the Board's decisions on February 17, 2005, which was overruled by operation of law when the District took no action on the rehearing motion. The applicants subsequently filed suit against the District on July 29, 2005, alleging the District failed to issue written orders and permits confirming the Board's decision as required by statute. The petition also alleged, among other things, that the District assessed unlawful fees and costs against the applicants.

The District responded to the suit by issuing written orders on August 3, 2005, reflecting the Board's decisions on the applicants' permit applications. The orders issued by the Board are virtually identical except for the name of the applicant appearing on the order and the amount of water authorized for withdrawal. Each order provides:

On January 28, 2005 the Board approved the application of [applicant name]'s permit authorizing the withdrawal of groundwater from the Edwards–Trinity Aquifer ... This permit expires on December 31, 2005. Issuance of this Permit is subject to confirmation by the General Manager that the Applicant/Permitee has installed water well flow meters, has complied with all the District Rules, paid all fees due and owing to the District, and will comply with all provisions of the issued permit prior to issuance of the Permit. This Existing and Historic Permit is subject to the proportional adjustment regulations of the District. Effective date of the decision of the Board is January 28, 2005.

The District notified each of the permit applicants of the issuance of their respective order, informing the applicant that:

Enclosed is the Order of Kinney County Groundwater Conservation District on the decision of the Board on the above referenced permit application.

The decision on this permit was made on January 28, 2005. A motion for rehearing was timely filed on February 17, 2005. This motion for rehearing was overruled by action of law on May 18, 2005 and the decision of the Board is now final.

The permit may now be issued, if all conditions for issuance are met.

Following the issuance of the District's orders confirming the Board's decision, the applicants filed a second motion for rehearing with the District on August 23,

---

**3.** District Rule 17.10 provides:

A decision of the Board concerning a hearing matter may be appealed by requesting a rehearing before the Board within 20 calendar days of the date of the Board's decision ... Such a rehearing request is mandatory with respect to any decision or action of the Board before any appeal to District Court may be brought. The Board's decision is final if no request for rehearing is made within the specified time, upon the Board's denial of the request for rehearing, or upon rendering a decision after rehearing.... The failure of the Board to grant or deny the request for rehearing within 90 calendar days of the date of submission shall constitute a denial of the request. KINNEY COUNTY GROUNDWATER DIST. R. 17.10.

2005. This rehearing, like the applicants' first motion for rehearing, was overruled by operation of law when the District took no action on the motion.

On September 2, 2005, the District sent each of the applicants invoices, assessing the costs of the District's lawyers and technical consultants to the applicants. The correspondence accompanying the invoice reminded each of the applicants that:

> a decision has been made on your application for a Historic and Existing Permit for groundwater use and an order confirming that decision has been issued. Prior to issuance of the permit, the District must confirm the existence of a meter or other approved, alternative measuring method; that your well is in compliance with District rules and that all fees have been paid ... The issuance of your permit is contingent upon the payment of all fees and the installation of a meter or the submission by you of a plan for alternatively measuring the amount of water being used.

Upon receipt of this correspondence, the applicants filed a third motion for rehearing with the District on September 22, 2005. The District, however, took no action on this rehearing, and the motion was overruled by operation of law.

After the applicants filed their third motion for rehearing with the District, they filed a first amended petition with the trial court on November 22, 2005. This petition requested, among other things, a declaration that: (1) the District was violating the Water Code and District Rules by failing to take timely action on their permit applications; (2) the District lacks authority to charge groundwater use fees (during the permit process) based on the "maximum historic use amount claimed in" their permit applications; (3) the applicants are entitled to refunds of any groundwater fees paid to the District from December 1,

2003 to present; (4) the District lacks authority to require the applicants to pay the District's legal and consulting expenses for their permit hearings; (5) the Open Courts provision of the Texas Constitution prohibits the requirement that non-administrative fees be paid as a condition of permit issuance; and (6) the District is required to issue permits to the applicants and refund excess fees paid by the applicants. Following the filing of cross-motions for partial summary judgment by the parties, the trial court granted the applicants' motion for partial summary judgment and denied the District's motion. In granting the applicants' motion, the trial court essentially declared that: (1) the District lacks statutory authority to demand that the applicants pay groundwater fees (during the permit process) based on the "maximum historic use amount claimed in" their permit applications; (2) the applicants are entitled to refunds of any groundwater production fees paid to the District pursuant to District Rule 14.01; (3) the District lacks statutory authority to require the applicants to reimburse the District's legal/consulting expenses or permit hearing costs; (4) the time lines established by the Texas Water Code are mandatory; and (5) the applicants are entitled to existing and historic use permits.

After the trial court granted the applicants' partial summary judgment, the applicants filed a second amended petition with the trial court on July 20, 2006, seeking relief under both Chapter 36 of the Water Code and the Uniform Declaratory Judgment Act ("UDJA"). The petition repeats the applicants' previous claims and also requests the court to compel the District to issue their permits and declare that: (1) the District violated its own rules by allowing individuals to participate in the permit proceedings without those individuals demonstrating any interest in the permit applications distinct from the public

generally; (2) the District's "Procedural Guidance" rules were adopted in violation of notice and hearing requirements of the Texas Water Code and the District's own rules; (3) the District violated Chapter 36 of the Texas Water Code by disregarding the statutory definitions of "beneficial use" and "waste"; (4) the unsworn testimony of Board members regarding the merits of the permit applications violated article I, section 9 of the Texas Constitution and Texas Rule of Evidence 605; and (5) the District must issue permits authorizing the withdrawal of an amount of water equal to each applicant's maximum historic/existing use or, alternatively, for the withdrawal of an amount of water equal to that recommended by Walthour. The District responded by filing a plea to the jurisdiction on September 11, 2006, alleging the trial court lacked subject matter jurisdiction because: (1) the applicants' claims are not ripe since the District has yet to render final decisions on the permit applications; (2) the applicants failed to exhaust their administrative remedies with the District before filing suit; (3) the applicants' claims are not appropriate for review under the UDJA; and (4) the issues raised in the applicants' second amended petition are outside the scope of the order of assignment by which the case below was transferred to the Honorable Mickey Pennington upon the recusal of the first judge hearing the case.[4] The trial court denied the District's plea, and this appeal followed.[5]

## STANDARD OF REVIEW

 A plea to the jurisdiction is a dilatory plea by which a party challenges a court's authority to determine the subject matter of the action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a trial court has subject matter jurisdiction is a question of law subject to *de novo* review. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). The plaintiff bears the burden of pleading facts that show the district court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). In reviewing a trial court's ruling on a plea to the jurisdiction, we construe the pleadings in favor of the pleader and look to the pleader's intent. *Id.*

## DISCUSSION

The applicants' seconded amended petition raises claims that generally fall within one of the following categories: (1) challenges to the validity of the District's individual permit decisions under Chapter 36 of the Water Code; or (2) requests for determinations broader than the effectiveness of the District's particular permit decisions under the UDJA. The District contends the trial court should have granted its plea to the jurisdiction as to the applicants' Chapter 36 claims because: (1) the District's permit decisions are not final, and the applicants have failed to exhaust their administrative remedies; and (2) the applicants have failed to seek substantial evidence review of the District's permit decisions as required by section 36.253 of

---

4. The underlying matter was originally before the Honorable Thomas F. Lee, judge of the 63rd Judicial District Court, Kinney County, Texas. After Judge Lee recused, the matter was assigned to the Honorable Mickey Pennington, judge of the 38th Judicial District Court, Uvalde County, Texas.

5. The trial court also denied the District's motion to sever the partial summary judgment granted by the trial court. Because the trial court denied the severance motion, the court's summary judgment ruling is not at issue in this appeal.

the Water Code. The District further contends the trial court should have granted its plea to the jurisdiction as to the applicants' UDJA claims because the applicants: (1) failed to show their requested declarations are proper under the UDJA; (2) failed to join all parties with an interest who would be affected by the requested declarations; and (3) are impermissibly seeking redundant remedies under the UDJA and Chapter 36 of the Water Code. The District also generally asserts that the trial court erred in denying its plea to the jurisdiction because it believes the applicants lack standing to seek the relief requested. According to the District, the applicants lack "standing to seek the relief requested" because the applicants are "attempt[ing] to challenge the District's decisions regarding applications and proceedings in which they did not participate." We will address each issue in turn.

### FINALITY & EXHAUSTION OF ADMINISTRATIVE REMEDIES

The District complains the trial court erred by denying its plea to the jurisdiction regarding the applicants' claims relating to the validity of the District's individual permit decisions under Chapter 36 of the Water Code because the applicants are making a premature attempt to arrest the administrative process before the District has taken final adverse action against them. The District argues that because it has yet to issue the applicants their existing/historic use permits, the Board's decisions are not final and the applicants must continue to seek relief through the District's administrative process before filing suit against it. The applicants respond that their right to file suit against the District does not depend upon the actual issuance of a permit by the District; but rather, depends upon the District issuing a final decision concerning their permit applications. The applicants maintain the

District has issued final orders regarding their permit applications as the District has refused to retract its permit decisions despite three motions for rehearing filed by the applicants. The applicants further insist that by filing three different motions for rehearing with the District, each of which were overruled by operation of law when the District took no action on them, they have exhausted their administrative remedies.

### Finality of the District's Orders

Section 36.251 of the Water Code provides that "[a] person, firm, corporation, or association of persons affected by and dissatisfied with any provision or with any rule or order made by a district is entitled to file a suit against the district or its directors to challenge the validity of the law, rule, or order." TEX. WATER CODE ANN. § 36.251. It further provides that "[t]he suit may only be filed after all administrative appeals to the district are final." *Id.* The statute, however, does not define what constitutes a final order for purposes of pursuing judicial review.

■ Although section 36.251 does not define what constitutes a final order, the Texas Supreme Court has provided courts with guidance on this issue. *See Tex.-New Mexico Power Co. v. Tex. Indus. Energy Consumers*, 806 S.W.2d 230, 232 (Tex. 1991). The supreme court has indicated that when a court evaluates whether an administrative order is final it should "consider the statutory and constitutional context in which the agency operates" and treat as final an agency order that: (1) is definitive; (2) is promulgated in a formal manner; (3) is one with which the agency expects compliance; and (4) imposes an obligation, denies a right, or fixes some legal relationship as a consummation of the administrative process. *Id.*

■ Applying the guidelines pronounced by *Texas–New Mexico Power Co. v. Texas Industrial Energy Consumers*, we conclude that the District's orders approving the applicants' permit applications, which were orally rendered during an open meeting and later reduced to writing, were final. First, the orders concerning the applicants' permit applications were definitive in that they expressed the District's intent to adjudicate each applicant's right to withdraw a specified amount of groundwater beneath his or her property. The orders provide that the Board "approved the application[s] . . . authorizing the withdrawal of groundwater from the Edwards–Trinity Aquifer" and that "permit[s] will be issued in the [stated] amounts." The letter the District issued with its permit orders underscores each order's definitiveness: "The decision on this permit was made on January 28, 2005. A motion for rehearing was timely filed on February 17, 2005. *This motion for rehearing was overruled by action of law on May 18, 2005 and the decision of the Board is now final.* The permit may now be issued, if all conditions for issuance are met." [6] Second, the orders were promulgated in a formal manner, as they were approved by the Board in a properly called open meeting and eventually reduced to writing. Third, the orders are intended to deny rights and fix a legal relationship as a consummation of the administrative process. Reflecting the consummation of numerous administrative hearings, the orders adjudicate the applicants' water withdrawal rights and limit each applicant to significantly less groundwater than had been originally sought by the applicants. Finally, the Board certainly expected compliance with its orders. When the District issued its orders to the applicants, the General Manager of the District notified each of the applicants that "the permit may now be issued, if all conditions for issuance are met. Please contact me if you have any questions or to resolve any matters for issuance of the permit, including payment of all fees. *I will not issue the permit until I have heard from you on these matters.*" (emphasis added).

In reviewing the statutory context in which the instant orders were issued, we note the Water Code mandates prompt resolution of permit applications filed with a groundwater district. TEX. WATER CODE ANN. § 36.114(d) ("The district shall promptly consider and act on each administratively complete application for a permit or a permit amendment. . . ."). Adopting the District's suggestion that finality is achieved only upon the District's actual issuance of a permit would inject indefinite and unnecessary delay into a process that the Legislature requires to proceed expeditiously. *See id.* at (d)-(f); *see also* § 36.252 ("A suit brought under this subchapter shall be advanced for trial and determined as expeditiously as possible. No postponement or continuance shall be granted except for reasons considered imperative by the court."). Allowing finality to the orders in this case ensures the prompt review and disposition of the applicants' permit applications.

**Exhaustion of Administrative Remedies**

■ As previously noted, the applicants filed three motions for rehearing with the

---

**6.** (emphasis added). The fact that the Board approved the permit applications upon the condition that the District's General Manager confirm each applicant's installation of a water well flow meter, compliance with the Rules of the Kinney County Groundwater Conservation District, and payment of all fees due and owing to the District does not diminish or affect the definitiveness of the District's order in this instance. *See Tex.-New Mexico Power Co.,* 806 S.W.2d at 233 (recognizing that conditions placed on the issuance of a permit do not necessarily diminish or eliminate the definitiveness of the order approving the permit).

District; one motion after the District orally rendered its orders on the applicants' permit applications, and two more after the District reduced its oral orders to writing. The record reflects that the District took no action in response to any of these motions for rehearing. As a result of the District's failure to act, each of the applicants' motions for rehearing was overruled by operation of law. *See* KINNEY COUNTY GROUNDWATER DIST. R. 17.10. It is clear from the circumstances that the applicants have afforded the District with the opportunity to redress the errors that purportedly occurred during the permit process as required by the Rules of the Kinney County Groundwater District and the Texas Water Code. *See id.;* TEX. WATER CODE ANN. § 36.251. We therefore conclude the permit applicants have exhausted their administrative remedies for purposes of filing suit against the District.

## SUBSTANTIAL EVIDENCE REVIEW

Next, the District argues the trial court erred in denying its plea to the jurisdiction because the applicants have failed to seek substantial evidence review of the District's permit decisions as required by section 36.253 of the Water Code. *See* TEX. WATER CODE ANN. § 36.253 (providing "[t]he burden of proof is on the petitioner, and the challenged law, rule, order, or act shall be deemed prima facie valid. The review on appeal is governed by the substantial evidence rule as defined by Section 2001.174, Government Code."). By not pursuing the proper type of judicial review, the District claims the applicants, who have allegedly opted to pursue *de novo* review of the District's orders, have failed to invoke the trial court's jurisdiction.

The District's main arguments in its plea to the jurisdiction allege the trial court lacked jurisdiction because: (1) the applicants' claims are not ripe since the District has yet to render final decisions on their permits; (2) the applicants failed to exhaust their administrative remedies with the District before filing suit; (3) the applicants' claims are not appropriate for review under the UDJA; and (4) the issues raised in the applicants' second amended petition are outside the scope of the order of assignment. The District's appellate argument concerning the applicants' failure to pursue the proper type of review under the Water Code is simply not addressed in the plea to the jurisdiction. Thus, the trial court's interlocutory order does not deny the District's plea to the jurisdiction on this basis.

■■ We are to confine our review on appeal to the ruling on the plea to the jurisdiction that was actually filed, and may not address whether a trial court erred in denying a plea on a ground that was not argued below. *See Austin Indep. Sch. Dist. v. Lowery,* 212 S.W.3d 827, 834 (Tex.App.-Austin 2006, pet. denied); *Brenham Housing Auth. v. Davies,* 158 S.W.3d 53, 61 (Tex.App.-Houston [14th Dist.] 2005, no pet.); *City of Dallas v. First Trade Union Sav. Bank,* 133 S.W.3d 680, 686–87 (Tex.App.-Dallas 2003, pet. denied). "Although subject matter jurisdiction cannot be waived and may be raised for the first time in an appeal from a final judgment, section 51.014(a)(8) of the civil practice and remedies code does not grant this Court jurisdiction to review claims that were neither included in the plea to the jurisdiction nor considered by the district court." *Lowery,* 212 S.W.3d at 834. Accordingly, we decline to review the District's argument.[7]

7. The District argues the cases cited in support of our discussion of this issue have been

overruled by the Texas Supreme Court's decision in *Thomas v. Long,* 207 S.W.3d 334 (Tex.

## THE UNIFORM DECLARATORY JUDGMENT ACT

The District argues the trial court erred in denying its plea to the jurisdiction regarding the applicants' requests for declaratory relief pursuant to the UDJA because the applicants: (1) failed to show their requested declarations are proper under the UDJA; (2) failed to join all parties with an interest who would be affected by the requested declarations; and (3) are impermissibly seeking redundant remedies under the UDJA and Chapter 36 of the Water Code.

With respect to the District's contention that the applicants failed to demonstrate their requested declarations are proper under the UDJA, we are not persuaded by the District's arguments. The applicants' UDJA claims seek determinations broader than the effectiveness of a particular District permit decision, including whether the District has exercised authority beyond its statutorily conferred powers. Such requests are proper under the UDJA. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n,* 100 S.W.3d 510, 519–20 (Tex.App.-Austin 2003, pet. denied); *Beacon Nat'l Ins. Co. v. Montemayor,* 86 S.W.3d 260, 267 (Tex.App.-Austin 2002, no pet.).

As for the District's claim that the applicants' suit lacks necessary parties, we decline to review this contention on appeal. The District argues the applicants may not seek declaratory relief because such relief will affect additional parties who are not present to defend their interests.[8] The

District's plea to the jurisdiction, however, does not address this argument. As a result, the trial court's interlocutory order does not deny the District's plea on this basis. We therefore need not review this argument on appeal. *See Lowery,* 212 S.W.3d at 834; *Davies,* 158 S.W.3d at 61; *City of Dallas,* 133 S.W.3d at 686–87.

Lastly, the District claims the applicants are impermissibly seeking redundant remedies under the UDJA and Chapter 36 of the Water Code. According to the District, when a statute, like Chapter 36, provides an avenue for attacking a District's order, a declaratory judgment action will not lie to provide redundant remedies. We again note the District's plea to the jurisdiction does not address this argument. The trial court's interlocutory order therefore does not deny the District's plea on this basis. Consequently, we decline to review this argument on appeal. *See Lowery,* 212 S.W.3d at 834; *Davies,* 158 S.W.3d at 61; *City of Dallas,* 133 S.W.3d at 686–87.

### STANDING

The District further complains the trial court erred in denying its plea to the jurisdiction because it believes the applicants lack standing to seek the relief requested. According to the District, the applicants lack "standing to seek the relief requested" because the applicants are "attempt[ing] to challenge the District's decisions regarding applications and proceedings in which they did not participate." Once again, the District's plea to the juris-

2006). We are not persuaded by this argument because *Thomas* simply holds that appellate courts have jurisdiction under section 51.014(a)(8) to entertain interlocutory appeals from both pleas to the jurisdiction and motions for summary judgments challenging subject matter jurisdiction. *Id.* at 339. In other words, *Thomas* provides that interlocutory jurisdiction exists "irrespective of the procedural vehicle used" to challenge juris-

diction. *Id. Thomas* does not address the issue of whether an appellant can challenge a trial court's denial of a plea to the jurisdiction on a ground that was not argued below.

8. The District complains about the applicants' failure to name as parties those individuals who contested the permit applications at the district hearings.

diction does not address this particular argument. The trial court's interlocutory order thus does not deny the District's plea on this basis. Accordingly, we decline to review this argument on appeal. *See Lowery,* 212 S.W.3d at 834; *Davies,* 158 S.W.3d at 61; *City of Dallas,* 133 S.W.3d at 686–87.

### CONCLUSION

Based on the foregoing, we affirm the trial court's order denying the District's plea to the jurisdiction.